**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

GROVER SWEETING,

                    Plaintiff,

    v.                                     No. 12-CV-917
                                           (DNH/CFH)

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.

---

| **APPEARANCES:** | **OF COUNSEL:** |
| --- | --- |
| OLINSKY LAW GROUP<br>Attorneys for Plaintiff<br>One Park Place<br>300 South State Street<br>Syracuse, New York 13202 | HOWARD D. OLINSKY, ESQ.<br>MICHAEL J. TELFER, ESQ. |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney for the<br>   Northern District of New York<br>Attorney for Defendant<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | TOMASINA DiGRIGOLI, ESQ.<br>Special Assistant United States Attorney |

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION and ORDER[1]

Plaintiff Grover Sweeting ("Sweeting") brings this action pursuant to 42 U.S.C.

§§ 405(g), 1383(c)(3) seeking review of a decision by the Commissioner of Social

Security ("Commissioner") denying his application for benefits under the Social Security

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

Act.  Compl. (Dkt. No. 1).  Sweeting moves for a finding of disability and the

Commissioner cross-moves for a judgment on the pleadings.  Dkt. Nos. 14, 17.  For the

reasons that follow, it is recommended that the Commissioner's decision be affirmed.


## I.  Background

## A.  Facts

Born on October 10, 1966, Sweeting was forty-one years old when he applied for

disability benefits.  T. 161.[2]  Sweeting has an eleventh grade education and was

enrolled in special education classes.  T. 54, 167.  Sweeting previously worked as a:

(1) gun stock maker; (2) propane tank repairer; (3) siding technician; (4) steel cutter;

and (5) supervisor of truck loaders.[3]  T. 168.  Sweeting alleges disability from multiple

impairments including epilepsy and the seizures which accompany the disease and a

left shoulder injury that resulted from falling off a ladder on October 24, 2007.  T.

70–71, 255, 342.


## B.  Procedural History

On January 25, 2010, Sweeting protectively filed an application for social security

disability insurance ("SSDI") and supplemental security income ("SSI") benefits

pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. claiming an alleged onset

---

[2]  "T." followed by a number refers to the page of the administrative record filed by the Commissioner.  Dkt. No. 11.

[3]  Sweeting testified that he briefly worked at a diner during the third quarter of 2010, into the early fourth quarter, working as a cook and then a dishwasher.  T. 41. Due to his seizures, he could not keep up with the job.  T. 41.

date of October 28, 2007.  T. 16, 76–77.  That application was denied on April 1, 2010.

T. 78–85.  Sweeting requested a hearing before an Administrative Law Judge ("ALJ"),

Rosanne M. Dummer, which was held on April 13, 2011.  T. 37–68, 86, 89–122.  In a

decision dated May 18, 2011, the ALJ held that Sweeting was not entitled to disability

benefits.  T. 13–34.  On July 14, 2011, Sweeting's counsel filed a timely request for

review with the Appeals Council.  T. 12.  On March 6, 2012, after the Appeals Council

had received and reviewed additional medical information from Sweeting's counsel, the

Appeals Council denied Sweeting's request, thus making the ALJ's findings the final

decision of the Commissioner.  T. 5–8.  This action followed.[4]

## II.  Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether

the correct legal standards were applied and whether substantial evidence supports the

decision.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence

is "more than a mere scintilla," meaning that in the record one can find "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402

---

[4] Sweeting's counsel commenced this action on June 5, 2012, advising the Court that a pending request for an extension to file a civil action was timely made to the Appeals Council on May 7, 2012.  Compl. ¶ 3.  On June 21, 2012, the Appeals Council granted Sweeting a thirty-day extension.  T. 2–3.  The Commissioner does not challenge the timeliness of Sweeting's complaint.  Given Sweeting's good faith effort in seeking an extension of time to commence this civil action, the granting of the requested extension, and the Commissioner's silence as to the timeliness of this action, the Court addresses Sweeting's contentions as if they were timely made.

U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g) (2006); Halloran, 362 F.3d at 31.

## B.  Determination of Disability[5]

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . . ." 42 U.S.C. § 423(a)(1) (2004).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A).  A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based

---

[5]  While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably."  Donato v. Sec'y of Health and Human Servs., 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment

must be supported by "medically acceptable clinical and laboratory diagnostic

techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based

[upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts,

subjective complaints of pain or disability, and educational background, age, and work

experience."  Ventura v. Barnhart, No. 04-CV-9018(NRB), 2006 WL 399458, at *3

(S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).[6]

   The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520,

to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he [or
> she] is not, the [Commissioner] next considers whether the
> claimant has a 'severe impairment' which significantly limits
> his [or her] physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the
> third inquiry is whether, based solely on medical evidence,
> the claimant has an impairment which is listed in Appendix 1
> of the regulations.  If the claimant has such an impairment,
> the [Commissioner] will consider him [or her] disabled
> without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a 'listed'
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work.  Finally, if the claimant is
> unable to perform his [or her] past work, the [Commissioner]
> then determines whether there is other work which the
> claimant could perform.

---

[6] All unpublished opinions cited to by the Court in this Report-Recommendation
are, unless otherwise noted, attached to this Recommendation.

Berry, 675 F.2d at 467.  The plaintiff bears the initial burden of proof to establish each

of the first four steps.  DeChirico v. Callahan, 134 F.3d 1177, 1179–80 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).


### C.  ALJ Dummer's Findings

Sweeting, represented by counsel, testified at the video conference hearing held on

April 13, 2011 along with vocational expert (VE) Donald J. Woolwine.  T. 16, 36–68

(transcript from the administrative hearing).  Using the five-step disability sequential

evaluation, the ALJ found that Sweeting (1) had not engaged in substantial gainful

activity since October 28, 2007, the alleged onset date; (2) had the following severe

medically determinable impairments: status post April 2008 arthroscopic repair for left

shoulder labral tear, status post September 2008 decompression for left cubital tunnel,

seizure disorder, traumatic brain injury, hand tremors, bilateral carpal tunnel syndrome,

right biceps tear, and L3-4 disc bulge; (3) did not have an impairment, alone or in

combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of

Social Security Regulation Part 404; (4) maintains:

> the residual functional capacity [("RFC")] to perform a range
> of light work . . . .  [Sweeting] . . . can lift twenty pounds
> occasionally and ten pounds frequently; sit six of eight
> hours; and stand/walk six of eight hours.  He can
> occasionally climb ramps, stairs, and balance.  He can never
> climb ladders, ropes, or scaffolds.  He can frequently stoop,
> kneel, crouch, or crawl.  He is right hand dominant.  Due to
> left extremity limitation, he cannot perform over the shoulder

> work with his left upper extremity, and he can perform frequent but not constant/repetitive reaching with his left upper extremity. He can perform frequent, but not constant/repetitive, manipulations with his hands bilaterally. He must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. He cannot perform commercial driving. He must avoid the hazards of work involving unprotected heights and dangerous moving machinery. He is limited to simple, routine, repetitive type tasks. Due to some spelling and reading limitations, [Sweeting] may require hands-on training or verbal instructions

and thus, (5) given his age, education, work experience, and RFC, was capable of engaging in employment which exists in significant numbers in the national economy. T. 19–29. Therefore, a determination of not disabled was made.

### D. Sweeting's Contentions

Sweeting contends that the ALJ's decision denying benefits should be remanded or judgment should be granted in his favor. Sweeting first contends that the ALJ erred in determining Sweeting's Residual Functional Capacity ("RFC"). First, Sweeting contends that the ALJ failed to contact the treating physician, Daniel Murphy, M.D., for an updated opinion of Sweeting's function-by-function limitations. Second, Sweeting contends that the ALJ failed to afford proper weight to the opinions of the treating physician, Marie-Jean Desravines, M.D. and the consultative examiner, Kalyani Ganesh, M.D. Third, Sweeting contends that the ALJ's adverse credibility determination was not supported with substantial evidence. Sweeting next contends that the ALJ failed to support the Step 5 conclusion with substantial evidence.

## 1. RFC

### i. Failure to Develop the Record

An ALJ has an affirmative duty to develop the administrative record during Social Security hearings, even when the claimant is, as in this case, represented by counsel. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citations omitted); see also 20 C.F.R. § 404.1512(d) (describing Commissioner's duty to develop a "complete medical history for at least the [twelve] months preceding the month in which [claimant] file[s an] application . . . ."); 20 C.F.R. § 404.1512(e) (explaining how the Commissioner will attempt to retrieve the entire medical history from claimant's treating sources as opposed to always seeking consultative examinations). Accordingly, "[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citations omitted); see also Roat v. Barnhart, 717 F. Supp. 2d 241, 264 (N.D.N.Y. 2010) (holding that where a "medical record paints an incomplete picture of [claimant's] overall health during the relevant period, as it includes evidence of the problems, the ALJ had an affirmative duty to supplement the medical record, to the extent it was incomplete, before rejecting [claimant's] petition.") (internal quotation marks and citations omitted).

Sweeting contends that the ALJ's failure to contact Dr. Murphy for an updated medical source statement ("MSS") function-by-function analysis constitutes a breach of the ALJ's duty to develop the record. See Funk v. Astrue, No. 10-CV-602 (MAD), 2012 WL 501017, at *4 (N.D.N.Y. Feb. 15, 2012) (explaining the ALJ's duty to obtain either a

"MSS or RFC Assessment from plaintiff's treating physician[, or at least] . . . contact

plaintiff's treating physician in an attempt to obtain an assessment.") (citing cases).

> Because "[t]he expert opinions of a treating physician as to
> the existence of a disability are binding on the factfinder," it
> is not sufficient for the ALJ simply to secure raw data from
> the treating physician. What is valuable about the
> perspective of the treating physician—what distinguishes
> him from the examining physician and from the ALJ—is his
> opportunity to develop an informed opinion as to the
> physical status of a patient. To obtain from a treating
> physician nothing more than charts and laboratory test
> results is to undermine the distinctive quality of the treating
> physician that makes his evidence so much more reliable
> than that of an examining physician who sees the claimant
> once and who performs the same tests and studies as the
> treating physician. It is the opinion of the treating physician
> that is to be sought; it is his opinion as to the existence and
> severity of a disability that is to be given deference.

Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991).  Thus, "[a]lthough the

regulation provides that the lack of such a [MSS] will not render a record incomplete, it

nevertheless promises that the Commissioner will request one . . . regardless of

whether the record contains a complete medical history."  Funk, 2012 WL 501017, at *5

(citations omitted).  The failure of an ALJ to contact a treating physician to provide a

MSS or function by function analysis "constitutes a breach of the ALJ's duty to develop

the record, and provides a basis for remand."  Lawton v. Astrue, No. 08-CV-137

(LEK/DEP), 2009 WL 2867905, at *16 (N.D.N.Y. Sept. 2, 2009) (citing cases).

    RFC describes what a claimant is capable of doing despite his or her impairments

considering all relevant evidence, which consists of physical limitations, symptoms, and

other limitations beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145,150

(N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's

findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ relied upon the opinions of Drs. Murphy, Ganesh, and Desravines who provided specific physical limitations with regard to lifting, pushing, pulling, and overhead movement in determining Sweeting's RFC. Consistent with Peed, which is relied upon by this district when determining whether or not there is a gap in the record which the ALJ has a duty to supplement, no such void exists here where the ALJ cited to quantitative lifting restrictions supported by the informed opinion of treating physicians.

Dr. Murphy, an orthopedic surgeon, treated Sweeting from February 13, 2008 through April 29, 2009. T. 23, 26, 243–54. The record contains Dr. Murphy's treatment notes during this period. T. 242–61. On February 13, 2008, Dr. Murphy examined Sweeting and found Sweeting experienced prominent acromioclavicular ("AC")[7] joint tenderness in the left shoulder, elbow tenderness at the ulnar nerve, positive Tinel sign,[8] and surface tenderness in the forearm. T. 247. On October 15, 2008, Dr. Murphy referred Sweeting for physical therapy and opined that Sweeting was temporarily totally disabled. T. 245. On December 10, 2008, Dr. Murphy followed-up

---

[7] Acromioclavicular "pertain[s] to the acromion and clavicle, especially to the articulation between the acromion and clavicle." DORLAND'S ILLUSTRATED MED. DICTIONARY 20 (28th ed. 1994) [hereinafter "DORLAND'S"]. The acromion is "the lateral extension of the spine of the scapula, projecting over the shoulder joint and forming the highest point of the shoulder[.]" Id. The clavicle is "the bone articulating with the sternum and scapula[.]" Id. at 339.

[8] "Tinel sign" refers to "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." Id. at 1527.

with Sweeting's left elbow and noted that Sweeting's shoulder revealed no swelling, had a 120-degree forward flexion, and an external rotation of thirty degrees. T. 243. Sweeting's elbow showed good motion with minimal tenderness and good sensation to light touch. T. 243. Dr. Murphy opined that Sweeting could return to work after January 1, 2009 with certain limitations: no lifting, pushing, or pulling greater than twenty pounds, no climbing for two months, and no repetitive overhead lifting with the left arm. T. 243. On April 29, 2009, Dr. Murphy examined Sweeting and opined that Sweeting had a twenty percent loss of use of the left arm and was not working at the time. T. 251. Dr. Murphy did not provide a function-by-function assessment of Sweeting at that time. T. 251.

The ALJ gave "great weight" to "Dr. Murphy's opinion of no overhead lifting, no climbing, and work abilities in the light range, which is consistent with . . . [Sweeting's] . . . testimony and Dr. Ganesh's opinions, as well as almost no evidence of any subsequent treatment for . . . [Sweeting's] . . . extremities." T. 26. Sweeting asserts that since a function-by-function assessment was present in the December 10, 2008 opinion but absent in the April 29, 2009 opinion, Dr. Murphy's reports created an ambiguity with respect to whether Sweeting could perform work in the light range on April 29, 2009. Pl.'s Mem. of Law (Dkt. No. 14) at 15–16. However, Dr. Murphy provided a function-by-function assessment on December 10, 2008 and could have done so again in his April 29, 2009 opinion if the assessment had changed. Further, Sweeting testified that Dr. Murphy, not Dr. Desravines, treated his shoulder impairments and had also released him back to work. T. 47. Such testimony is evidence a reasonable mind might accept as adequate to support a conclusion that Dr.

11

Murphy's function-by-function assessment, provided on December 10, 2008, did not change on April 29, 2009.  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citation omitted).  Furthermore, as the ALJ noted, there was almost no evidence of any treatment for Sweeting's extremities after April 29, 2009.  Moreover, the ALJ relied on other medical evidence and sources in the record such as Dr. Ganesh's opinions.  Drs. Murphy and Ganesh's opinions, in conjunction with Sweeting's testimony, substantially support the ALJ's determination that Sweeting could perform work in the light range.  See subsection II(ii) infra.  Accordingly, the ALJ's decision to rely on Dr. Murphy's December 10, 2008 function-by-function assessment and accord it great weight was appropriate given the fact that, despite the absence of a function-by-function assessment on April 29, 2009, the ALJ was not required to reconcile all factual disputes so long as the RFC determination was supported by substantial evidence.

Therefore, the Commissioner's decision on this issue is affirmed.


### ii.  Treating Physician's Rule

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  "This rule

12

applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D. Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133–34; see 20 C.F.R. § 404.1527(e) (2005).

Here, Sweeting contends that the ALJ improperly afforded "little weight" to the opinion of Dr. Desravines. On August 25, 2008, Dr. Desravines treated Sweeting for pre-operation clearance for Sweeting's left shoulder. T. 277. On December 18, 2008, Dr. Desravines treated Sweeting for abdominal pain and on January 16, 2009, Dr. Desravines followed-up with Sweeting, who complained of ear pain. T. 278–79, 281–82. On February 8, 2010, Sweeting checked-in with Dr. Desravines and did not present any complaints. T. 284–85.

On January 4, 2011, Dr. Desravines treated Sweeting for complaints of back pain and noted that Sweeting had complained of the same back pain in May 2009 but had

not seen her since then.  T. 333.  Dr. Desravines did not provide a function-by-function

assessment at the time.  T. 333.  Dr. Desravines prescribed Tylenol with codeine and

Skelaxin for Sweeting.[9]  T. 333.

On April 26, 2011, Dr. Desravines opined that Sweeting had decreased range of

motion in the left shoulder and full range of motion in the right shoulder.  T. 340.

Sweeting could not fully extend his fingers.  T. 340.  Dr. Desravines authored a note for

Sweeting to be out of work until a neuropsychological evaluation was completed.  T.

340.

In a MSS dated May 6, 2011, Dr. Desravines opined that Sweeting could lift and

carry ten pounds, both occasionally and frequently, stand and walk for at least two

hours in an eight-hour day, sit without difficulty, push and pull with limitation in the upper

extremities, and had decreased range of motion of the left arm as a result of a shoulder

surgery.  T. 317–19.  Dr. Desravines opined Sweeting could occasionally climb ramps

and stairs, balance, kneel, but can never crouch, crawl, or stoop.  T. 320.  Dr.

Desravines further opined that Sweeting could occasionally be limited in reaching at all

directions and overhead, and constantly limited in handling, fingering, with no limitations

to feeling.  T. 320.  Sweeting was limited frequently by extreme temperatures, humidity

and wetness, and hazards.  T. 321.  Dr. Desravines also noted that cold temperatures

may exacerbate Sweeting's back pain and advised against heights and use of

---

[9]  Tylenol with codeine is "indicated for the relief of mild to moderately severe
pain."  THE PHYSICIANS' DESK REFERENCE 2427 (9th Ed. 2009) [hereinafter "PDR"].
"Skelaxin is indicated as an adjunct to rest, physical therapy, and other measures for
the relief of discomforts associated with acute, painful musculoskeletal conditions."
PDR at 1784–85.

machinery due to a history of seizures. T. 322. The ALJ recognized that Dr. Desravines's statement appears to indicate that, with seizure precautions, Sweeting could perform at least sedentary work. T. 27.

The ALJ concluded that, despite Dr. Desravines being a treating source, Dr. Desravines's recommendation to take Sweeting "out of work for a neuropsychological evaluation [was afforded little weight because Dr. Desravines's MSS] . . . did not list any work precluding mental or neurological limitations." T. 27. Further, "little weight is given to [Dr. Desravines] limiting . . . [Sweeting] . . . to a range of sedentary work, due to numerous contradictions between her [MSS] and . . . [Sweeting's] testimony of his abilities." T. 27. Next, the ALJ further noted that "[Dr. Desravine's] conservative treatment with no evidence of any meaningful treatment for . . . [Sweeting's] upper extremities and medication management of Tylenol #3s for back pain does not support such a limiting assessment." T. 27.

Sweeting attacks the ALJ's weighing of Dr. Desravines's opinion in three ways. Sweeting contends that the ALJ failed to consider the lengthy treatment relationship between himself and Dr. Desravines, beginning from August 25, 2008 to April 26, 2011.[10] T. 277–79, 281–82, 284–85, 326–27, 329–31, 333, 340. However, the medical record shows that Sweeting did not complain to Dr. Desravines about back pains until May 2009, and did not return to Dr. Desravines with the same complaints until January 4, 2011. T. 333, 340. Next, Sweeting contends that Dr. Desravines's MSS is supported by objective evidence. However, the evidence cited by Sweeting largely points to

---

[10] Sweeting addresses only Dr. Desravines's opinion of his shoulder impairment. Pl.'s Mem. of Law at 19–22.

15

moderate degenerative changes documented from October 2007 through October 2008. Pl.'s Mem. of Law at 19–21. Conversely, Dr. Desravines's MSS contains statements that are inconsistent with Sweeting's testimony. For example, Sweeting testified that he could lift seventy-five to a hundred pounds with his right arm and no more than twenty pounds with his left arm. T. 48. However, Dr. Desravines opined that Sweeting could not lift or carry over ten pounds. T. 318–19. Sweeting contends that he cannot sit still but Dr. Desravines opined that Sweeting does not have difficulty with sitting. T. 319. Sweeting argues that the ALJ should have identified the specific statements made by Sweeting that contradicts Dr. Desravines's MSS. As discussed above, such statements are contained in the record. See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) ("Where . . . the evidence of record permits us to glean the rationale of the ALJ's decision, we do not require that he have mentioned every item of testimony present to him or have explained why he considered particular evidence unpersuasive or insufficient . . . .") (citation omitted).

Lastly, Sweeting argues that the ALJ failed to note that Dr. Desravines also prescribed Sweeting with Skelaxin and Celebrex.[11] However, Sweeting does not show how consideration of the two additional medications renders the ALJ's conclusion invalid. See e.g., Coyle v. Apfel, 66 F. Supp. 2d 368, 377 (N.D.N.Y. 1999) ("plaintiff's treatment was conservative, limited only to medication and hot packs" (citations omitted)). Moreover, even though it is improper to "question[] the validity of . . . [a

---

[11] Celebrex is indicated for relief of the signs and symptoms of osteoarthritis, rheumatoid arthritis in adults, ankylosing spondylitis, and management of acute pain in adults. PDR at 2981.

treating physician's] . . . opinion based on [her] "conservative" course of treatment," the ALJ did not simply "characterize[] the fact that [Dr. Desravines] recommended only conservative [treatment] as substantial evidence that [Sweeting] was not physically disabled . . . ." Foxman v. Barnhart, 157 F. App'x 344, 347 (2d Cir. 2005) (citing Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)) (internal quotation marks omitted). Therefore, the ALJ's conclusion in affording little weight to certain opinions of Dr. Desravines was supported by substantial evidence.

As for Dr. Ganesh, the ALJ afforded "great weight" to "most of Dr. Ganesh's opinions, which are mostly consistent with Dr. Murphy's and are consistent with her examination of [Sweeting]." T. 27. In his MSS, Dr. Ganesh opined that Sweeting showed "[n]o gross limitation to sitting, standing, walking, or the use of the right upper extremity. Moderate limitation to lifting, carrying, pushing, and pulling with the left upper extremity. With seizures, he should avoid activities, such as driving, activities at heights or around machinery, and swimming." T. 304. Sweeting argues that the term "moderate" makes it unclear as to the specific weight limitation that Sweeting could lift, carry, push, and pull with the left upper extremity. T. 27, 305. Further, Sweeting contends that the ALJ should have carried out her affirmative duty to develop the record and recontact Dr. Ganesh for clarifying evidence. The ALJ cannot "infer, without additional information, that [a] plaintiff . . . [is] able to perform a limited range of . . . work based on the [consultative] examiner's vague findings." Dickson v. Comm'r of Soc. Sec., No. 04-CV-1296 (NAM/RFT), 2008 WL 553208, at *5 (N.D.N.Y. Feb. 27, 2008) (citing Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000)) (finding that consultative examiner's use of the terms "moderate" and "mild," without additional information, did

not permit the ALJ to make the necessary inference that the plaintiff can perform the exertional requirements of sedentary work).

Sweeting's contention that Dr. Ganesh's use of the term "moderate" in his opinion was vague is without merit. In his opinion, Dr. Ganesh observed that Sweeting had a normal gait, walked on heels and toes without difficulty, could fully squat, had a normal stance, did not require assistance with changing for the exam or getting on and off the exam table, and was able to rise from the chair without difficulty. T. 303. Dr. Ganesh further found that Sweeting's cervical spine shows full flexion and extension, had lateral flexion bilaterally, and had full rotary movement bilaterally. T. 304. Further, Sweeting's left shoulder had a ninety degree elevation and ninety degree abduction. T. 304. Sweeting had full range of motion of hips, knees, and ankles, bilaterally. T. 304. Sweeting's left upper extremity is 4/5 and lower extremities 5/5 bilaterally. T. 304. Dr. Ganesh found that Sweeting's hand and finger dexterity were intact with grip strength 5/5 bilaterally. These opinions are consistent with the ability to perform work in the light range, which led to Dr. Ganesh's MSS.[12]

---

[12]

> Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking . . . or when it involves sitting most of the time with some pushing and pulling of arm or leg controls . . . If someone can do light work, . . . he or she can also do sedentary work, unless there are additional limiting factors such as a loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The opinion of a consultative examiner like Dr. Ganesh may constitute substantial evidence.

> It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consults, since such consultants are deemed to be qualified experts in the field of social security disability. Such reliance is particularly appropriate where . . . the opinions of these . . . State agency medical consultants are supported by the weight of the evidence.

See Fiozzo v. Barnhart, No. 05-CV-561 (LEK/VEB), 2011 WL 677297, at *8 (N.D.N.Y. Jan. 19, 2011) (citations omitted); see also Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (explaining that "the opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record.") (citations omitted); McEaney v. Comm. of Soc. Sec., 536 F. Supp. 2d 252, 256 (N.D.N.Y. 2008) ("the evaluations of non-examining State agency medical and psychological consultants may constitute substantial evidence . . . An ALJ must treat such evaluations as expert opinion evidence of non-examining sources . . . This treatment extends to . . . RFC assessments [because] . . . [s]tate agency consultants are experts in evaluating the medical issues of disability claims.") (citations omitted).   Accordingly, the ALJ's decision to rely on Dr. Ganesh's opinions was not in error and her ultimate conclusion was supported by substantial evidence.

Accordingly, the Commissioner's decision on these issues are affirmed.

### iii.  Sweeting's Credibility

Sweeting contends that the ALJ improperly discredited his testimony about his

physical limitations.  Pl.'s Mem. of Law at 24–26.  It is the duty of the ALJ, "not the reviewing courts, to appraise witness credibility."  <u>Carvey v. Astrue</u>, 380 F. App'x 50, 53 (2d Cir. 2010) (citations omitted).  The ALJ determines whether an ailment is an impairment based on a two-part test.  First, the ALJ must decide, based upon objective medical evidence, whether "there [are] medical signs and laboratory findings which show . . . medical impairment(s) which could reasonably be expected to produce [such] pain. . . ."  <u>Barringer v. Comm'r of Soc. Sec.</u>, 358 F. Supp. 2d 67, 81 (N.D.N.Y. 2005); 20 C.F.R. § 404.1529 (2003).  This primary evaluation includes subjective complaints of pain.  20 C.F.R. § 404.1529 (2003).  "'Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.'"  <u>Barringer</u>, 358 F. Supp. 2d at 81 (quoting <u>Crouch v. Comm'r of Soc. Sec. Admin.</u>, No. 01-CV-0899 (LEK/GJD), 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003).

An ALJ must consider all symptoms, including pain, and the extent to which these symptoms are consistent with the medical and other evidence.  20 C.F.R. § 404.1529 (2003).  The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  <u>See</u> <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1978).  The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i)  [The claimant's] daily activities;
>
> (ii)  The location, duration, frequency, and intensity of [the

claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;

(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

In this case, Sweeting solely challenges the ALJ's conclusion concerning Sweeting's credibility with respect to his daily activities. The ALJ concluded that Sweeting's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." T. 25. However, Sweeting's "credibility in statements concerning the intensity, persistence, and limiting effects of these symptoms . . . [were] poor." T. 25. The ALJ discussed Sweeting's demeanor as a witness, the inconsistency between his testimony and the medical record with regard to the frequency of seizures experienced, the conservative treatment prescribed for Sweeting's complaints for which he does not follow up, and Sweeting's daily activities. T. 25–27. These conclusions are supported by substantial evidence.

Sweeting's medical record and testimony are inconsistent. As to his seizures, Sweeting testified that his seizures impaired his memory and prevented him from

keeping up with a job at a diner.  T. 41.  Sweeting testified that he had a seizure one

month prior to the ALJ hearing.  T. 45.  Sweeting further testified that stress triggers a

seizure.  T. 46.  Sweeting takes Dilantin[13] for seizures but it is not fully effective.  T. 46.

Sweeting testified that Dr. Desravines released him back to work but his work is

restricted due to his seizures.  T. 48.

Despite Sweeting's complaints of epileptic seizures, Sweeting's medical records

indicate that his seizures were controlled.  T. 25, 329–30.  The record shows that

Sweeting experienced one emergency room visit following a seizure on January 29,

2007.  T. 237–38.  At that time, blood tests indicated that Sweeting's Dilantin levels

were low and Sweeting admitted that he did not take Dilantin for at least one day prior

to the seizure.  T. 237–38.  Sweeting also indicated that during the emergency room

visit, his last seizure occurred two years prior and the emergency room physician

opined that the low levels of Dilantin probably contributed to the seizure.  T. 238.  Such

medical evidence is inconsistent with Sweeting's statements.

There are other statements provided by Sweeting that are unsupported by objective

medical evidence.  First, Sweeting testified that he could lift seventy-five to a hundred

pounds with his right arm and no more than twenty pounds with his left arm.  T. 48.

However, the medical record indicates that Sweeting could not lift or carry more than

twenty pounds.  Second, Sweeting testified that he had difficulty holding onto objects

---

[13]  Dilantin, or Phenytek, "is indicated for the control of generalized tonic-clonic
(grand mal) and complex partial (psychomotor, temporal lobe) seizures and prevention
and treatment of seizures occurring during or following neurosurgery."  PDR at 2193;
see MEDLINE PLUS, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682022.html
(last visited Aug. 1, 2013).

due to his carpal tunnel.  T. 52.  Yet, Sweeting does not receive treatment to address

such difficulties.  T. 49.  And lastly, Sweeting complained of blurred vision, but there is

no record evidence of the condition.  T. 25, 50.  Instead, Dr. Ganesh found that

Sweeting's eyesight was nearly normal.  T. 303.

With regard to his daily activities, Sweeting testified that he helps his fiancée around

the house and that he had to sit a lot.  T. 51.  However, Sweeting also previously

testified that he could not sit or stand still.  T.  45.  Sweeting testified he could not do

much because of his poor memory.  T. 51.  Sweeting does woodwork and refinishes

furniture for family members.  T. 51.  Sweeting testified that he drives.  T. 51.  The

medical record shows that approximately one year after his shoulder injury, Sweeting

went hunting because he felt "so good."  T. 195.

Sweeting's recitation of his daily activities are significant and indicative of a fairly

active man.  Such activities were insufficient to establish disability.  The ALJ stated that

Sweeting's "activities of daily living do not indicate that he is disabled" because

Sweeting "went hunting[,]" drives, performs woodwork, and assists his disabled fiancée

with housework.  T. 26.  "[I]t is well-settled that the performance of basic daily activities

does not necessarily contradict allegations of disability, as people should not be

penalized for enduring the pain of their disability in order to care for themselves."

Stoesser v. Comm'r of Soc. Sec., No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at

*6–7 (N.D.N.Y. Jan. 19, 2011)) (citing inter alia Woodford v. Apfel, 93 F. Supp. 2d 521,

529 (S.D.N.Y. 2000)) (internal quotation marks omitted).  However, Stoesser does not

equate doing woodwork, refinishing furniture, and hunting to basic daily activities.  Id.

2011 WL 381949, at *6–7 (remanding where claimant's activities included cleaning the

house, taking the spouse to work, watching television, cooking simple meals, and shopping for groceries).  Further, contrary to the opinions of Dr. Desravines and Ganesh, and despite his own testimony about his experience with seizures, Sweeting continues to drive.  Moreover, the record is devoid of any medical evidence indicating that Sweeting experiences difficulty with sitting.

As "[i]t is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise credibility of witnesses, . . . [if] the [Commissioner's] findings are supported by substantial evidence . . . the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec., Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks and citations omitted).  Accordingly, for the reasons cited above, the ALJ's decision to accord Sweeting's testimony reduced credibility was supported by substantial evidence.

Accordingly, the Commissioner's decision on this issue is affirmed.


## 2.  Testimony of the VE

The ALJ then conducted a Step Five analysis.  The ALJ may apply the Grids or consult a VE.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003).  Here, a VE was questioned.  "A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony . . . [thus i]f a hypothetical question does not include all . . . impairments, limitations and restrictions . . . a [VE's] response cannot constitute substantial evidence to support a

24

conclusion of no disability." Pardee v. Astrue, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (citations omitted).

In this case, Sweeting contends that the hypothetical posed to the vocational expert ("VE") was incomplete, resulting in a Step 5 determination that is unsupported by substantial evidence. Specifically, Sweeting argues that the ALJ should have included Dr. Desravines's opinion that Sweeting (1) could never crouch, crawl, and stoop and (2) was constantly limited in his ability to reach in all directions including overhead, handle, and finger. T. 320–21.

At the hearing, the ALJ provided the VE with hypothetical information of Sweeting's vocational profile and RFC, and asked if such an individual could perform work in the national economy. T. 28–30, 62–64. Based upon the hypothetical, the VE testified that the individual would be able to perform work in the light range of a product sorter (jobs occurring nationally, 20,000; regionally, 2,000), a product packer (jobs occurring nationally, 30,000; regionally, 3,000), and a product weigher (jobs occurring nationally, 15,000; regionally, 1,500). T. 64. In the sedentary range, the VE identified a product assembler (jobs occurring nationally, 30,000; regionally, 3,000), a product inspector jobs occurring nationally, 15,000; regionally, 1,500), and a packing machine tender (jobs occurring nationally, 20,000; regionally, 2,000). Based upon this testimony, the ALJ concluded there was substantial evidence that there existed jobs which Sweeting could perform. T. 64.

As discussed supra, the ALJ's decision to give little weight to Dr. Desravines's opinion is supported by substantial evidence. The hypothetical which most clearly represented Sweeting's RFC was also supported by substantial evidence and thus

25

appropriately served as the basis for the determination denying disability. As substantial evidence supports the RFC findings which served as the basis of the aforementioned hypothetical, the ALJ appropriately relied upon the VE's testimony in concluding that Sweeting could continue to work and find substantial gainful activity. This satisfied the Commissioner's burden at Step Five of the analysis.

Accordingly, for these reasons, the Commissioner's decision on this issue is affirmed.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that the Commissioner's decision denying disability benefits be **AFFIRMED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Date: August 6, 2013
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge